**Thomas E. RUNYON, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 53S00–8804–CR–385.

Supreme Court of Indiana.

May 3, 1989.

Daniel Sherman, Deputy Public Defender, Monroe County, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of the crimes of Battery, a Class C felony, for which he received a sentence of eight (8) years; Rape, a Class A felony, for which he received a sentence of fifty (50) years; Burglary, a Class A felony, for which he received a sentence of forty (40) years; Criminal Confinement, a Class B felony, for which he received a sentence of ten (10) years; and Battery, a Class C felony, for which he received a sentence of eight (8) years. The sentences for Rape, Burglary, Criminal Confinement, and the last sentence for Battery were to run consecutively but concurrently to the first sentence for Battery. The sentences also were to run consecutively with those imposed in the Marion Superior Court on September 24, 1986.

The facts are: The victim in this case, J.B. lived alone in an isolated neighborhood in rural Monroe County. Relatives of appellant lived near J.B. The prosecution in this case stemmed from two separate occurrences, one on May 2, 1984 and the second on November 1, 1984. A few days before the May 2 occurrence, J.B. was cleaning the ditch in front of her house when Ernie Evans came by. She asked him if he knew anyone who could help her clean the ditch. At that time, appellant was staying three or four days with his relatives. Evans conveyed the information to appellant, who stated that he already had talked with J.B. about helping her, but she had told him she did not need help.

At approximately 10:00 p.m. on May 2, appellant knocked on J.B.'s door and said that he was a friend of Evans, who told him that she needed work done around her house. When J.B. told him she did not need help, appellant grabbed her, pushed the door open, and shoved her to the floor. J.B. struggled and appellant told her that he had a knife. J.B. then felt the knife cut across her fingers. Appellant suddenly stopped the attack, became apologetic, and left. J.B. received a cut across her fingers and a lump on the back of her head as a result of the attack. She called police, and a report was made of the incident.

In the early morning hours of November 1, 1984, J.B. was awakened by a man lying on top of her. When she started to struggle, the man warned her that he had a knife, which she felt cut her during the struggle. The man hit her several times on the side of the head, and in the struggle, they both fell from the bed to the floor. The man tied her hands above her head and raped her. He also informed her that he was going to take items from her home and ordered her into the bathroom so she could not see him. He then turned on lights in the house and proceeded to look for items. At that time, J.B. had reached the conclusion, based on a similarity of the voice, body odor, hair, general build, and the way he physically handled her, that her attacker was the same person who had attacked her on May 2.

Appellant came to the bathroom door and asked J.B. for her purse. The purse was in the bathroom, and as she opened the door to hand it to appellant, she could see his profile which verified her belief that it was the same person who had attacked her on May 2.

After appellant left the scene, authorities were summoned and J.B. was taken to the hospital for treatment of her injuries. Following her treatment, she was taken to police headquarters where a statement was taken about both incidents. A few days later she was shown a six-photograph array and immediately identified appellant as her attacker. Laboratory tests showed that motile sperm samples taken from J.B.'s body came from an ABO type O secretor, which would include eighty-eight percent of the male population. Further tests showed that appellant is within that group.

■ Appellant claims the trial court erred when it failed to grant his motion for severance. Appellant takes the position that the May 2 episode was too far removed in time and not connected in fact with the rape which occurred on November 1. Thus, under Ind.Code § 35–34–1–11(a), he had a right to have the charges separated for trial. Appellant is correct that when crimes are joined solely on the basis that they are of the same or similar conduct, the trial court must separate them upon motion of the defendant. *Eubank v. State* (1983), Ind., 456 N.E.2d 1012. However, in the case at bar, it is evident the two incidents were joined for trial for additional reasons other than their similarity.

■ Both attacks were perpetrated at the same location upon the same victim, and although appellant forced entry with direct confrontation of the victim at her door in the first instance and in the second instance he forcefully entered her house while the victim was asleep, his conduct after gaining entry in both instances was virtually identical in that he pounced upon her and injured her with a knife. The only difference between the two incidents was that on May 2 he had abandoned his attack, apologized, and left. In the incident of November 1, he completed his attack and raped the victim. Indiana Code § 35–34–1–9(a) provides that offenses may be joined in the same indictment or information if they "(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." From the evidence in the case at bar, the trial judge could correctly conclude that appellant had developed a scheme or plan to attack the victim. On May 2, for whatever reason, appellant abandoned his attack, and his return to the same victim in the same location on November 1 constituted a continuation of his plan to rape the victim.

The trial judge was acting within his sound discretion in making such a determination. *See Burst v. State* (1986), Ind. App., 499 N.E.2d 1140. We see no error in the refusal of the trial judge to separate the charges.

[3] Appellant claims the trial court erred in admitting into evidence a tape and transcript of the victim's statement to the police made on November 1, 1984. During the trial, J.B. had testified as to her recollections of the appearance of appellant at the time of the attacks but had seemed uncertain about the facial hair on appellant, specifically as to whether he had a moustache. On cross-examination, this hesitancy and apparent inconsistency was explored. Other evidence in the case was to the effect that appellant had always had a moustache.

In order to clarify the confusion as to what appellant may have told the police initially and what appellant was stating at trial, the State offered in evidence the tape of appellant's statement and a transcript of that tape. In fact, during cross-examination by defense counsel, the transcript had been used and J.B. had been directed to specific pages of the transcript.

Initially, when the State offered the transcript in evidence, appellant objected on the grounds that the jury should only listen to the tape itself and not examine the transcript. When the tape was offered, counsel for appellant stated "O.K. Thank you. No

objection on the tape, Your Honor." Appellant's counsel further stated that his only objection was to placing a copy of the transcript into evidence. About half-way through the playing of the tape, counsel then objected to the remainder of the tape being played to the jury because "this doesn't even come under Mr. Miller's *res gestae* broad exception to the hearsay rule. She'll be merely repeating in November something concerning the May incident."

For all practical purposes the State's entire case rested upon the testimony of the victim. Defense counsel had very ably and properly attempted to discredit J.B.'s identification of appellant. To the extent that there were some discrepancies involved in her past and present description and identification of appellant, it was extremely important that the recording of her police station interview be presented for the jury's consideration.

As far as appellant's objection that this violated the hearsay rule, we would refer to *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482 wherein this Court held that where a witness is in the courtroom available for cross-examination it is not error to permit out-of-court statements of that witness. This was the situation in the case at bar. In fact, prior to the admission of the tape and transcript, J.B. had been questioned concerning the content of the transcript. Following the playing of the tape to the jury, J.B. was still available for cross-examination. We see no error in submitting both the tape and the transcript of the tape to the jury for their examination.

▮ Appellant contends the court should not have permitted the jury to listen to the tape during their deliberations. The jury had sent a note to the court during their deliberations stating that they wished to review State's Exhibit No. 23, which was the transcribed statement taken on November 1. The court notified the parties of the jury's request and of his intention to again play the tape for the jury and allow them to follow on the transcript. The court overruled appellant's objection, called the jury into the courtroom, distributed transcripts, and played the tape. The transcripts were then collected and the jury returned to the jury room to continue deliberation. We see nothing irregular about the trial court's procedure in this regard. *Johnson v. State* (1988), Ind., 518 N.E.2d 1073.

▮ Appellant claims there is insufficient evidence to sustain his convictions. The testimony of the victim alone is sufficient to sustain a conviction. *Griffin v. State* (1986), Ind., 501 N.E.2d 1077; *Young v. State* (1986), Ind., 493 N.E.2d 455. In his argument to support his position, appellant attempts to have us weigh J.B.'s testimony and find that it is too inconsistent to support the verdict. However, all variances and inconsistencies of appellant's statements were fully presented to the jury. It was within their province to weigh that evidence and determine its credibility. We will not invade that province. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

Appellant also cites us to the fact that he presented alibi evidence to the extent that during the alleged November 1 attack he was in a trailer with his girlfriend some eighty miles from the scene of the crime. His girlfriend and a friend so testified. The jury had the opportunity to observe these witnesses and consider their interest in the case and relationship to appellant. This Court will not invade the jury's province in making this determination. *Id.*

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.