Thurman E. GOODMAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 28A01–9804–CR–155.

Court of Appeals of Indiana.

April 19, 1999.

Susan K. Carpenter, Public Defender of Indiana, J. Michael Sauer, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Thurman Goodman (Goodman) appeals his convictions, after a jury trial, of two counts of burglary,[1] a Class C felony; three counts of theft[2], a Class D felony; and one count of receiving stolen property,[3] a Class D felony. He presents four issues on appeal, which we consolidate[4] and restate as whether the trial court improperly denied Goodman's motion to sever the charges against him.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment are that sometime between May 24 and June 7, 1997, Goodman and his girlfriend Tammy Lamar (Lamar) drove to an unoccupied home in rural Greene County. Lamar saw Goodman make three or four trips into the house and return with boxes of dolls, a musical teapot, and a cookie jar. On or about June 1, 1997, Lamar took Goodman to a restaurant in Bloomfield at about 1:30 a.m. Goodman broke into a locked freezer and took some frozen food. On or about May 8, 1997, Goodman and Lamar drove to a spot near a home in rural Greene County. Lamar saw Good-

---

1. Ind.Code § 35–43–2–1.

2. Ind.Code § 35–43–4–2(a).

3. Ind.Code § 35–43–4–2(b).

4. Because we remand for new trials based on the trial court's improper joinder of the offenses in a single trial, we need not address Goodman's alternative assertions that his trial counsel failed to

properly impeach the credibility of the State's chief witness; that the prosecutor improperly elicited evidence that Goodman had committed other uncharged crimes and improperly urged the jury to find Goodman guilty based on Goodman's character; and that the trial court improperly ordered Goodman to pay restitution to one of his victims and to an insurance company.

man take a riding lawn mower and place it in a gully by the side of the road. Goodman and Lamar later returned with a truck to take the mower. Also during this period of time, Goodman had in his possession a tool-box which had been reported stolen by an acquaintance of Goodman and Lamar.

## DISCUSSION AND DECISION

Goodman moved to sever his trials for the burglary of and theft from the rural home; for the theft of the frozen food from the restaurant; for the theft of the lawn mower and the burglary of the building from which it was taken; and for the receipt of the stolen tool box. The trial court denied the motion and Goodman was tried on and convicted of all six counts in a single proceeding.

When two or more offenses have been joined for trial in the same indictment or information solely on the ground they are of the same or similar character, the defendant has a right to a severance of the offenses, Ind.Code § 35-34-1-11(a), and the court has no discretion to deny the defendant's motion for severance. *Pardo v. State*, 585 N.E.2d 692, 693 (Ind.Ct.App.1992).

In other cases, the court is to grant severance when it determines severance is appropriate to promote a fair determination of the defendant's guilt or innocence considering 1) the number of offenses charged; 2) the complexity of the evidence to be offered; and 3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently to each offense. Ind.Code § 35-34-1-11(a). Two or more offenses may be joined when they are based on the same conduct or on a series of acts which are connected together or which are part of a single scheme or plan. *Id.* § 35-34-1-9(a)(2).

The State characterizes Goodman's offenses as the "same conduct" and as a "single scheme for burglarizing and stealing," Brief of Appellee at 4, because Goodman "would arrive at the crime scene in the middle of the night, via untravelled [sic] roads, and use gloves."[5] *Id.*

We rejected a similar argument in *Pardo*. There, Pardo was charged with four counts of theft arising from an incident where a number of unlocked cars in a parking lot had been entered and their stereos taken. In the same parking lot at about the same time, a set of golf clubs was removed from the trunk of a car. The driver had left the keys in that car. Pardo was also charged with attempted theft in connection with an incident two and one-half months later. In that incident, a car's window was smashed and its dashboard torn apart. Pardo's motion to sever the theft charges from the attempted theft charge was denied, and we reversed.

In *Pardo*, we reviewed and contrasted the following decisions involving situations where the courts properly denied severance: *Chambers v. State*, 540 N.E.2d 600 (Ind.1989) (all charges arose from continuing police surveillance of the defendant and his customer, and all charges may have arisen from one transaction with the same customer); *Burst v. State*, 499 N.E.2d 1140 (Ind.Ct.App.1986) (all counts arose out of sale of stolen property or drugs to one undercover officer); *Runyon v. State*, 537 N.E.2d 475 (Ind.1989) (charges arose out of two attacks on same victim at same location, supporting conclusion that defendant had a scheme or plan to attack the victim); *Jameison v. State*, 268 Ind. 599, 377 N.E.2d 404 (1978) (charges arose out of bur-

---

5. We note that the pages of the record to which the State refers us offer scant support for this characterization. Lamar's testimony on those pages does indicate Goodman wore gloves during the incident at the restaurant and at the rural home. That part of the record does not indicate Goodman wore gloves during the incident involving the lawn mower.

The State's characterization of the incidents as taking place in the "middle of the night" appears to be based on record references to Lamar's testimony that Goodman used a flashlight at the rural home and that the truck they were using in

the lawn mower incident had its headlights on. With regard to the break-in at the restaurant, the State directs us to the following testimony in support of its assertion that the incident took place in the "middle of the night": "Eugene pulls it off to the side there where it's kind of dark but it's, you know, it's light a little bit." R. at 692.

The only support to which the State directs us for its characterization of the roads Goodman used as "untravelled" [sic] appears to be Lamar's description of them as "back roads." *E.g., id.* at 701.

glaries at two gas stations on the same highway the same morning, both stations were entered by breaking a window, and a radio was stolen from each, demonstrating a series of connected acts); *Evans v. State,* 542 N.E.2d 546 (Ind.1989) (crimes were a series of connected acts when defendant stole a car, then used the stolen car in a burglary three days later); and *Davidson v. State,* 558 N.E.2d 1077 (Ind.1990) (defendant drowned two of her children after taking out life insurance policies on each, indicating common motive and *modus operandi* ). *And see Henson v. State,* 707 N.E.2d 792 (1999) (murder, kidnaping, robbery, and other "crime spree" related charges were sufficiently connected because all were part of an "uninterrupted series of events").

Here, as in *Pardo,* the crimes were not connected together in any apparent manner, as all involved different victims, different property, and different locations over a period of about one month; nor were they part of a single scheme or plan to steal property. Goodman, unlike Chambers, was not detected as a result of continuing police surveillance. The crimes with which Goodman was charged were not connected by a distinctive nature, nor do they evidence a common *modus operandi.*

*Modus operandi* means literally "method of working," and refers to a pattern of criminal behavior so distinctive that separate crimes may be recognized as the work of the same wrongdoer. *Penley v. State,* 506 N.E.2d 806, 810 (Ind.1987) (addressing the *modus operandi* exception to rule 404(b) of the Federal Rules of Evidence in a rape prosecution). There, the court noted that there were similarities in the crimes Penley had been charged with, but that the similarities were not "distinctive." *Id.* "Not only must the methodology of the two crimes be strikingly similar, but the method must be unique in ways which attribute the crime to one person. Given the inherent similarities in all sex crimes, the common use of disguises, and the frequent late night or early morning timing of residential intrusions, we cannot say that these attacks reveal a distinctive *modus operandi.*" *Id.*

The crimes with which Goodman was charged also are marked by similarities which are not at all "distinctive." Like the residential intrusions noted in *Penley,* burglaries and thefts frequently occur at night. Like the disguises noted in *Penley,* gloves are commonly used in thefts and burglaries. We fail to find the fact Goodman typically used "back roads" to be a "distinctive" feature of burglaries committed in a predominantly rural county like Greene.

Because the crimes with which Goodman was charged did not constitute a series of acts connected together or parts of a single scheme or plan, we must conclude the crimes were joined at trial simply because the offenses were of "the same or similar character." Ind.Code § 35–34–1–11(a). For that reason, the trial court lacked discretion to deny Goodman's motion for severance, and we must reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

KIRSCH, J., and FRIEDLANDER, J., concur.