John E. WILHELMUS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 74A01–0405–CR–221.

Court of Appeals of Indiana.

March 23, 2005.

John Burley Scales, Frank R. Hahn, Law Office of John Burley Scales, Boonville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

John Wilhelmus appeals his convictions and sentences for attempted dealing in methamphetamine [1] and dealing in methamphetamine,[2] both class A felonies. We affirm.

### Issues

Wilhelmus presents three issues for our review, which we restate as:

I. Whether the trial court properly granted the State's Indiana Criminal Rule 4(D) motion to continue the jury trial;

---

1. Ind.Code § 35–48–4–1(a)(1)(A),–(b)(1) and Ind.Code § 35–41–5–1.

2. Ind.Code § 35–48–4–1(a)(1)(A),–(b)(1).

II. Whether the trial court abused its discretion under Indiana Evidence Rule 404(b) by admitting evidence of Wilhelmus's prior arrest; and

III. Whether the trial court violated Indiana Code Section 35–38–1–6 by entering judgments of conviction and sentences on both attempting to manufacture and manufacturing methamphetamine.

## Facts and Procedural History

The facts most favorable to the convictions indicate that on December 11, 2003, Tony Weaver's home security company called the Spencer County Sheriff's Department to report a possible breaking and entering at Weaver's property. Specifically, a motion sensor on the east doors of Weaver's barn had been activated. James Taggart, a Spencer County deputy sheriff, was dispatched to the scene where he began to check the perimeter of the barn and heard noise from within. As he continued around the barn, Taggart heard a door open and saw Wilhelmus exit the barn. Upon learning that an alarm had been tripped, Wilhelmus stated that he must have activated the alarm. He further explained that he was authorized to be in Weaver's barn and showed Taggart his access card for the alarm system. Wilhelmus also volunteered that no one else was around. Taggart then asked Wilhelmus for permission to check around the barn to ensure that everything was okay. Wilhelmus replied, "Sure." Tr. at 38.

Taggart entered the barn and noticed a light coming from a loft area reached by two flights of stairs. Upon climbing the stairs, Taggart discovered an operating methamphetamine laboratory. Taggart then exited the barn, saw Wilhelmus smoking a cigarette, and placed him under arrest. Additional officers arrived on the scene to investigate. Shortly thereafter, Weaver and his girlfriend, Jana[3] Small, returned to the home. Police arrested them as well.

A search warrant was obtained. Within the barn, police found methamphetamine as well as chemical solvents containing methamphetamine still in the manufacturing process. Just a sampling of the items included: ephedrine/pseudoephedrine, anhydrous ammonia, lithium, toluene, muriatic acid, sulfuric acid, ether, naphtha fuel, sodium chloride, glassware, plastic tubing, coffee filters, paper towels, painted propane tanks, funnels, air pumps, rubber gloves, battery strippings, battery hulls, blister packs, and miscellaneous tools.[4] *See* Appellant's App. at 455. Due to the sheer size of the laboratory and the substantial amount of chemicals, the Indiana State Police lab team responded to collect evidence and dispose of hazardous materials. Daniel Colbert, a criminal analyst with the state lab, arrived and observed that of the more than four hundred methamphetamine labs that he had investigated, it was either the largest or second largest operation. A later search of a safe within Weaver's home uncovered numerous documents, items, and a handgun belonging to Wilhelmus.

On January 7, 2004, the State charged Wilhelmus with conspiracy to commit dealing methamphetamine, a class A felony; possession of pseudoephedrine, a class D felony; illegal possession of anhydrous ammonia, a class D felony; possession of chemical reagents, a class D felony; possession of paraphernalia, a class A misdemeanor; maintaining a common nuisance, a class D felony; and possession of mari-

---

3. The record contains various spellings of her first name.

4. The list of the items found fills three and one-half pages of the field technician's report.

juana, a class A misdemeanor. Also on that date, the court granted Wilhelmus's previously filed [5] motion for a speedy trial and set a jury trial date of March 9, 2004. On March 5, 2004, the State filed a Criminal Rule 4(D) motion requesting a continuance. Appellant's App. at 324–30.

On March 8, 2004, Wilhelmus filed a written objection to the State's March 5 continuance motion, and the State filed its "Supplemental Filing in Support of State's Motion for Continuance." *Id.* at 314–17; 319–23. On that same day, the court issued an order stating: "After having read and considered the flurry of recent filings in this cause, the court finds that the State is entitled to a short continuance under CR 4(D). The Court reassigns trial by jury for April 12, 2004 at 9:00 A.M." *Id.* at 313. Also on March 8, 2004, the State amended the information by dismissing the six counts and charging Wilhelmus with the following two class A felonies: attempted dealing (manufacturing) methamphetamine in an amount of more than three grams, and dealing (manufacturing) methamphetamine in an amount of more than three grams. On March 9, 2004, Wilhelmus filed a written objection to a trial setting beyond the seventy-day Criminal Rule 4(B)(1) limit. On March 15, 2004, Wilhelmus filed a motion to dismiss for delay in trial.

Additional hearings were held on various matters before the three-day trial began. On April 14, 2004, a jury convicted Wilhelmus on both counts. On May 13, 2004, the court ordered thirty-year sentences on each count to be served concurrently.

### Discussion and Decision

#### I. *Criminal Rule 4(D)*

Wilhelmus contends that the trial court took no evidence before granting the State's motion for a Criminal Rule 4(D) continuance and that the record contains "no evidence that could have 'satisfied' the trial court that the State's motion had merit." Appellant's Br. at 8. To the contrary, Wilhelmus asserts that the "evidence identified by the State was actually available by the time the motion was granted, or clearly would not be available (the encrypted computer files) within the short delay that the State sought." *Id.*

When, as here, a defendant moves for a speedy trial, he invokes the procedures and deadlines of Criminal Rule 4(B)(1), which provides in relevant part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

Our supreme court has noted that "[t]he purpose served by Crim. R. 4(B) is to prevent a defendant from being detained in jail for more than 70 days after requesting an early trial." *Williams v. State,* 631 N.E.2d 485, 486 (Ind.1994). However, Criminal Rule 4(D) provides for an extension of this seventy-day period. *See Griffin v. State,* 695 N.E.2d 1010, 1013 (Ind.Ct. App.1998). Specifically,

> If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then

5. The chronological case summary indicates that Wilhelmus filed his motion for speedy trial on January 2, 2004.

be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged.

Ind.Crim. Rule 4(D). Moreover,

[a]ny exigent circumstances may warrant a reasonable delay beyond the limitations of Crim. R. 4, due deference being given to the defendant's speedy trial rights under the rule. The reasonableness of such delay must be judged in the context of the particular case, and the decision of the trial judge will not be disturbed except for an abuse of discretion. The purpose of Crim. R. 4(B) is to assure a speedy trial. This purpose is well served if the State must bring a defendant to trial within seventy days or show compelling reasons for the failure to do so. The rule was designed to assure criminal defendants speedy trials, not to provide them with a technical means of avoiding trial.

*Smith v. State,* 802 N.E.2d 948, 951 (Ind. Ct.App.2004); *see also Lockhart v. State,* 671 N.E.2d 893, 897 (Ind.Ct.App.1996) (noting abuse of discretion standard).

The State filed its request for Criminal Rule 4(D) continuance on March 5, 2004, the Friday before the trial was scheduled to begin on March 9, a Tuesday. In its lengthy March 5 motion, the State detailed the following reasons for its request:

1. A computer seized from Weaver's residence and believed to contain evidence of Wilhelmus's participation in the crimes had been sent to an expert for analysis. The expert recently notified the State that it had been unable to decrypt certain files on the computer despite four days of continuous attempt. The State could not locate and hire another expert and obtain the results prior to the March 9 trial date.

2. Although the State Lab was notified of the trial date in a timely manner, it had not yet completed the analysis and testing of the chemicals and compounds from the vast methamphetamine lab.

3. On March 1, 2004, the State discovered the necessity of Jail Commander William Coy's testimony; upon subpoenaing him two days later, the State learned that he would be in Florida during the week of trial. His attached affidavit confirmed this fact.

4. The State also learned within forty-eight hours prior to filing its request that key witness Daniel Colbert would not be able to testify if the trial were postponed just one week as he would be testifying in another trial and in training.

5. That same week, the State learned of inappropriate favors between the chief deputy sheriff, Weaver, Small, and Wilhelmus, which required that the sheriff "turn over the investigation in this matter to another law enforcement agency in order to maintain the integrity of the investigation and insure that all leads are followed." The State noted the impossibility of a new investigator being assigned and having time to sufficiently review the evidence to testify on the originally scheduled trial date.

Appellant's App. at 324–25 (paraphrased except where quotations appear).

On Monday, March 8, 2004, Wilhelmus filed his objection to the State's continuance request, and the State filed its supplemental filing in support of its motion for continuance. In its supplemental filing, the State further explained and updated as follows:

1. Coy, the sole custodian and person in charge of monitoring and retrieving inmate calls, is now in Florida and unavailable for the March 9 trial.

2. Although having received the evidence on January 16, 2004, the back-logged State Lab finally sent its drug analysis results back to the State late on March 5. The results changed the nature of the charges. The certificate of analysis was attached.

3. Despite working on the computer since February (according to an attached invoice), the expert company was unable to "break all of the encrypted passwords" and advised the State the prior week to send it to the Federal Bureau of Investigation. Because the State was in the process of sending the equipment to the FBI, any testing "cannot be completed before the March 9 trial date."

4. The appointment and familiarization of a new lead investigator "cannot occur" prior to March 9.

*Id.* at 319–23 (paraphrased except where quotations appear).

 The absence of a key witness through no fault of the State is good cause for extending the time period requirements for early trial. *See Woodson v. State*, 466 N.E.2d 432, 434 (Ind.1984). Furthermore, in response to an argument that a different witness could be presented, our supreme court has clarified, "Rule 4(D) does not mandate the evidence be essential or unique, only that it be unavailable and that the State be entitled to present it." *Smith v. State*, 502 N.E.2d 485, 488 (Ind.1987). Here, the State cited and provided supporting documentation that on the eve of trial, despite its best efforts in the prosecution of one of the largest methamphetamine labs in the county, the State was faced with: one unavailable key witness; another key witness who would be unavailable if the trial were postponed only one week; belated, case-altering drug analysis results; indecipherable computer files presumed necessary for identity purposes; and information of inappropriate, potentially investigation-compromising conduct among the sheriff, Wilhelmus, Weaver, and Small. The State's request for a fourteen-day extension was more than reasonable under the circumstances. Wilhelmus has not demonstrated that the trial court abused its discretion by granting the State's continuance. "The most fundamental consideration underlying Rule 4(B) is that the State cannot hold an accused indefinitely[.]" *Poore v. State*, 685 N.E.2d 36, 40 (Ind.1997). Despite the previously mentioned obstacles, the State brought Wilhelmus to trial just thirty days—rather than the ninety days permitted by Criminal Rule 4(D)—beyond the seventy-day early trial date. Given these particular facts, we see no abuse of discretion in the trial court's denial of Wilhelmus's motion to discharge for delay. *Cf. Griffin*, 695 N.E.2d at 1013 (concluding that a new trial set for twenty-eight days after the expiration of the seventy-day period was timely).

## II. Evidence Rule 404(b)

 On March 3, 2004, the State filed its Evidence Rule 404(b) notice of intent to offer evidence of Wilhelmus's involvement in a methamphetamine lab for which he was arrested on September 9, 2000. Following a hearing on the matter, the trial court permitted the admission of the evidence to prove Wilhelmus's identity as the manufacturer. Consistent with his objection[6] at trial, on appeal Wilhelmus asserts

---

**6.** While Wilhelmus preserved this issue by objecting at trial, we note that he did not seek a mistrial when the trial court denied his motion.

that there was no question of his identity. He argues that therefore the evidence about his involvement in the 2000 methamphetamine lab was inadmissible for any legitimate purpose. He contends that the evidence was highly prejudicial, especially where the trial court twice denied his request for a limiting instruction.

■■■ The admission of evidence is a determination entrusted to the discretion of the trial court. *Adkins v. State*, 703 N.E.2d 182, 186 (Ind.Ct.App.1998). We will reverse a trial court's decision only when the court's action is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *See Hyppolite v. State*, 774 N.E.2d 584, 592 (Ind. Ct.App.2002), *trans. denied.* If a trial court abused its discretion by admitting the challenged evidence, we will only reverse for that error if the error is inconsistent with substantial justice or if a substantial right of the party is affected. *See Iqbal v. State*, 805 N.E.2d 401, 406 (Ind.Ct. App.2004). "Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted." *Id.*

■■■ Evidence Rule 404(b) specifically bars the admission of evidence of other crimes, wrongs, or bad acts allegedly committed by the defendant to prove the defendant's character, and forbids the use of this kind of evidence to show that the defendant acted in a manner consistent with that character. *Oldham v. State*, 779 N.E.2d 1162, 1172 (Ind.Ct.App.2002), *trans. denied.* However, the rule permits the admission of such evidence for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Ind. Evidence Rule 404(b). This rule is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities, the so-called 'forbidden inference.'" *Hicks v. State*, 690 N.E.2d 215, 218–19 (Ind.1997). Thus, in assessing the admissibility of evidence under Evidence Rule 404(b), the trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Id.* at 221. "To determine whether the trial court abused its discretion, we employ the same test." *Iqbal*, 805 N.E.2d at 406.

In order to convict Wilhelmus of dealing as charged, the State had to prove that he knowingly or intentionally manufactured methamphetamine in an amount of three or more grams. *See* Ind.Code § 35–48–4–1. To convict him of the attempt count, the State had to prove that acting with the culpability required for commission of the crime, Wilhelmus engaged in conduct that constituted a substantial step toward commission of dealing. *See* Ind.Code § 35–41–5–1. Although Wilhelmus was found at the barn and other items belonging to him were later found in Weaver's safe, the fact of the matter was that the methamphetamine lab was on *Weaver's* property. Indeed, the lab was in the loft—and no one saw Wilhelmus in the loft of Weaver's

barn. Moreover, during cross-examination at trial, Wilhelmus focused on the fact that he did not live at Weaver's, did not attempt to leave the premises, and thus had no knowledge of the lab in Weaver's loft. Hence, the State was faced with proving Wilhelmus's connection with the methamphetamine lab circumstantially.

To that end, the State introduced evidence regarding the many similarities between the lab for which Wilhelmus had been arrested in 2000 and the one in Weaver's barn. For instance, both were located in lofts; similar glassware and professional chemical containers were used; the same unique brand of pseudoephedrine and ephedrine was used; Energizer brand lithium batteries were found at each; surveillance equipment and anhydrous ammonia were used in both labs; and the same unique vacuum drying system was used in both labs. In introducing the aforementioned evidence, the State was clearly attempting to link up the two labs via their similarities, thereby implicating Wilhelmus. That is, the State was attempting to use the identity exception to the general prohibition on propensity evidence.

 "The identity exception to the general prohibition on propensity evidence is crafted primarily for 'signature' crimes with a common modus operandi." *Thompson v. State*, 690 N.E.2d 224, 234 (Ind. 1997). "The exception's rationale is that the crimes, or means used to commit them, were so similar and unique that it is highly probable that the same person committed all of them." *Id.* Given the striking similarities between the 2000 lab and the one at issue in this case, we cannot say that the trial court abused its discretion determining that whatever prejudice might arise was outweighed by the probative value of the evidence. Further, any prejudice should have been minimized by the following final instruction: "Evidence has been introduced that the Defendant was involved in a crime other than that charged in the information. This evidence has been received solely on the issue of Defendant's identity. This evidence should be considered by you only for the limited purpose for which it was received." Appellant's App. at 60.

 Notwithstanding our above conclusion, we are troubled by the denial of Wilhelmus's two requests for a "limiting instruction." Evidence Rule 105 states: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly." The language of Rule 105 is mandatory. That is, if requested, the court "shall" restrict the evidence to its proper scope and admonish the jury. *See* Ind. Evid. R. 105. The rule is intended to "enable a party to request a limiting admonition at the time the evidence is offered, rather than waiting until the jury instructions." *Humphrey v. State*, 680 N.E.2d 836, 839 n. 7 (Ind.1997) (quoting 12 R. MILLER, INDIANA PRACTICE § 105.104 at 109–10 (2d ed.1995)).

 While Wilhelmus's counsel did not cite Rule 105 or use the term "admonishment," it is clear that the defense sought just that. In particular, Wilhelmus requested that the trial court inform the jury *before* it heard evidence regarding the 2000 lab that it should only consider such evidence for purposes of identity. In light of the compulsory nature of Rule 105 and Wilhelmus's request, we conclude that the trial court erred by not admonishing the jury prior to the admission of the evidence regarding the 2000 lab. However, under the unique circumstances of this case, where identity/signature crime evidence was used to link a defendant to two sepa-

rate methamphetamine labs, the final instruction cured the error of failing to admonish the jury when originally requested. While we do not reverse on this issue, we reiterate the better practice in such situations: upon request, the trial court should immediately admonish the jury as well as give a final instruction on the matter. *See, e.g., Johnson v. State*, 722 N.E.2d 382, 385 (Ind.Ct.App.2000); *see also Wilson v. State*, 765 N.E.2d 1265, 1271 (Ind.2002) (highlighting repeated and thorough jury admonishments limiting the use of the evidence).

### III. Indiana.Code Section 35–38–1–6

■■ Wilhelmus argues that entering judgment of conviction on and sentencing him for both attempting to manufacture methamphetamine and manufacturing methamphetamine violated Indiana Code Section 35–38–1–6. We disagree.

■■ If a defendant is charged in separate counts with an offense and an included offense, and is found guilty of both counts, "judgment and sentence may not be entered against the defendant for the included offense." Ind.Code § 35–38–1–6. Included offense means an offense that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;

(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind.Code § 35–41–1–16. A lesser included offense is necessarily included within the greater offense if it is impossible to commit the greater offense without first having committed the lesser. *Iddings v. State*, 772 N.E.2d 1006, 1016 (Ind.Ct.App. 2002), *trans. denied.* Section 35–38–1–6 precludes convictions on multiple counts where those counts have identical elements of proof. *See Goudy v. State*, 689 N.E.2d 686, 698 (Ind.1997) (vacating attempted carjacking conviction as lesser included offense of attempted robbery but emphasizing that it was necessary to do so only because both offenses involved the attempted taking of the same motor vehicle). However, if the evidence indicates that one crime is independent of another crime, it is not an included offense. *See Ingram v. State*, 718 N.E.2d 379, 381 (Ind.1999). Thus, whether an offense is included in another within the meaning of Indiana Code Section 35–38–1–6 requires careful examination of the facts and circumstances of each particular case. *See Iddings*, 772 N.E.2d at 1017.

To convict Wilhelmus of dealing as charged the State had to prove that he knowingly or intentionally manufactured methamphetamine in an amount of three or more grams. *See* Ind.Code § 35–48–4–1; *see also* Appellant's App. at 279 (amended information, Count II). To convict him of the attempt count, the State had to prove that acting with the culpability required for commission of the crime, Wilhelmus engaged in conduct that constituted a substantial step toward commission of dealing in three or more grams of methampmhetamine. *See* Ind.Code § 35–41–5–1; *see also* Appellant's App. at 279 (amended information, Count I).

In this case, the evidence presented by the State reasonably leads to the conclusion that Wilhelmus had already created methamphetamine in the amount of three or more grams on Weaver's property. Specifically, State Forensic Scientist Wil-

liam Bowles testified that he analyzed and measured, *inter alia*, two separate methamphetamine samples from Wilhelmus's lab. One weighed 1.05 grams and the other 2.00 grams. Tr. at 253. The State presented separate evidence that indicated that Wilhelmus was making additional methamphetamine, but the process had not yet been completed. State Criminal Analyst Colbert testified that basically every stage of the manufacturing process was active at Wilhelmus's lab and that depending upon the percent yield, sufficient pseudoephedrine/ephedrine was found to create between 214 and 249 grams of additional methamphetamine. *Id.* at 204–06. Accordingly, the evidence in this case permits the reasonable conclusion that Wilhelmus committed two independent offenses for which he may be separately punished without offending Indiana Code Section 35–38–1–6. *Cf. Scott v. State*, 803 N.E.2d 1231, 1240 (Ind.Ct.App.2004) (concluding two different offenses). That is, the attempt charge is not a lesser included offense and will not be vacated. *See also Floyd v. State*, 791 N.E.2d 206, 213 (Ind.Ct.App. 2003), *trans. denied.*

Affirmed.

RILEY, J., and ROBB, J., concur.