**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HOMER BALLARD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A05-1310-CR-524 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael J. Lewis, Judge
Cause No. 84D06-1009-FB-3223

**September 9, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Homer Ballard appeals his convictions of two counts of Class B felony robbery raising several arguments. We hold that Ballard was not entitled to severance of the two robberies as a matter of right because the offenses were linked by a single scheme or plan due to the striking similarities between the offenses, such as the details of the robberies and Ballard's choice of dark sunglasses and clothing. The trial court also did not abuse its discretion in denying Ballard's motion to sever because Ballard failed to make a showing that the complexity of the evidence rendered the jury incapable of rendering a verdict where there were only two robberies and each witness was clear in his or her testimony as to which robbery the testimony related to. We also hold that the trial court did not err in admitting evidence of uncharged robberies under the identity exception to Indiana Evidence Rule 404(b) where the similarities between the robberies and the robber's sunglasses and clothing were substantial. Ballard has waived appellate review of whether the trial court erred in admitting the gun found during a search of his room at his sister's house in Texas because he failed to make a contemporaneous objection to its admission. Further, any error in the admission of the gun was harmless where there was substantial evidence of guilt, including eyewitness and license-plate identification, satisfying us that there is no substantial likelihood the gun contributed to the convictions. Last, the trial court did not err in sentencing Ballard. Specifically, the trial court did not err in failing to identify the lack of threatened harm to a person or property as a significant mitigating factor where Ballard pointed a weapon at the victims and ordered them to comply with his demands. In addition, Ballard's forty-year aggregate sentence for two Class B felony robberies was not

2

inappropriate given that Ballard has an extensive criminal history and showed disdain for law enforcement and the criminal-justice system during the interview for his pre-sentence investigation report.

**Facts and Procedural History**

At approximately 2:00 p.m. on March 22, 2010, fifty-six-year-old Ballard entered an Advance America in Terre Haute, walked up to the counter, pointed a dark handgun at employee Amanda McMillin, threw a white canvas bag on the counter, and told McMillin to put money in it. After McMillin filled the bag, Ballard told McMillin and her manager to sit down in the back of the store. Ballard was wearing aviator sunglasses, jeans, and a hooded sweatshirt.

At approximately 3:00 p.m. on April 5, 2010, Ballard entered another Advance America in Terre Haute, pointed a black handgun at employee Christine Lien, and told her to fill a bag with paper money but no coins. After Lien filled the bag, Ballard told her to turn around and sit down. Ballard was wearing dark sunglasses, dark jeans, and a fisherman's hat.

On September 29, 2010, the State charged Ballard with two counts of armed robbery as Class B felonies. Ballard filed a motion to sever the counts, which the trial court denied. The State filed notice that it was intending to introduce misconduct evidence pursuant to Indiana Evidence Rule 404(b). Specifically, the State informed Ballard that it intended to introduce evidence that Ballard had committed four additional robberies on March 8, 2010, March 22, 2010, and April 9, 2010. Ballard responded that evidence of the other robberies was irrelevant except to show his allegedly bad character. Following a hearing, the trial

3

court concluded that the State could "address other incidences involving the defendant, but only for the purpose of identification." Appellant's App. p. 143.

During Ballard's August 2013 trial, McMillan, Lien, and an Advance America customer all identified him in court. In addition, the evidence revealed that at 5:45 p.m. on March 8, 2010, Ballard entered an Advance America in Jasper, Indiana, pointed a handgun at manager Amy Jones, placed a sack on the counter, and told her to give him her money. Jones took Ballard to the back of the store and filled a bag of money for him. Ballard told Jones to sit down on the floor and wait for five minutes until he left the store. Ballard was wearing aviator sunglasses and a hooded sweatshirt. Jones identified Ballard in a photo array and at trial. Before Jones testified, the trial court instructed the jury that her testimony was being offered solely on the issue of the defendant's identity and should be considered only for that purpose.

On March 22, 2010, Ballard entered an Advance America in Bloomington, pointed a black handgun at manager Shari Torr, and told her to fill his bag with money. After the manager filled the bag, Ballard told her to go to a back room. Ballard was wearing black sunglasses, jeans, and a hooded jacket. Before Torr testified, the trial court instructed the jury that her testimony was being offered solely on the issue of the defendant's identity and should be considered only for that purpose.

On April 9, 2010, at approximately 3:45 p.m., Ballard entered an Advance America in Marion, Indiana, pointed a black handgun at employee Angela Gray, placed an orange canvas bag on the counter, and told Gray to fill the bag with money. He did not want any loose change. Ballard was wearing a fisherman's hat. Gray identified him in a photo array,

4

which was not available at the time of trial. Before Gray testified, the trial court instructed the jury that her testimony was being offered solely on the issue of the defendant's identity and should be considered only for that purpose.

Last, on April 9, 2010, at approximately 4:30 p.m., Ballard entered a Check into Cash in Elwood, pointed a black handgun at employee Amy Moon, and told her to give him all of her money. After a manager filled Ballard's bag, he told the employees to go around the wall and wait there for five minutes while he left the store. Ballard was wearing dark sunglasses and a fisherman's hat. Moon identified him in a photo array. Before Moon testified, the trial court instructed the jury that her testimony was being offered solely on the issue of the defendant's identity and should be considered only for that purpose.

Ballard left the Check into Cash as customer Johnny Pine was walking through the front door. The employees told Pine that they had just been robbed, and Pine ran after Ballard. Pine, who saw Ballard get into a small red car, wrote down the car's license-plate number and gave it to the police. The police ran the plate number and discovered that it was registered to Ballard and his 2001 Hyundai.

Ballard was arrested for the Indiana robberies on May 20, 2010, at his sister Donna Ingram's house in Waskom, Texas. At the time, Ballard misidentified himself to the officers as "Bill." Police found Ballard's Hyundai outside Ingram's house. The Hyundai logos had been removed and Ford logos were attached in their place. In addition, Ballard's Indiana license plate had been removed and placed on the Hyundai's floorboard, and the vehicle had an attached counterfeited registration and inspection sticker.

Ingram consented to a search of her home. There, in the bedroom where Ballard was staying, the police found his social-security card and a black BB gun that looked like a handgun. Both items were admitted into evidence at trial without contemporaneous objection. Specifically, the following discourse occurred regarding the admission of the gun:

| | |
|---|---|
| STATE: | Now I will show you what's been marked as state's Exhibit 1. Can you identify the item please? |
| OFFICER LONG: | Yes, [t]his is the gun that was in the box, that was located inside the bag that I picked up from Jasper. |
| STATE: | What would you, what would you call that item? |
| OFFICER LONG: | An Airsoft BB gun. |
| STATE: | The state would move to admit state[']s Exhibit 1. |
| DEFENSE COUNSEL: | May I ask a preliminary question? |
| TRIAL COURT: | Go ahead. |
| DEFENSE COUNSEL: | That's the um, object that appears to be a, some type of BB gun that was found in Waskom, Texas in Homer's bedroom where he was staying at his sister[']s house? |
| OFFICER LONG: | Yes, correct. |
| DEFENSE COUNSEL: | No objection. |
| TRIAL COURT: | Show 1 admitted without objection. |

Tr., vol. 3, p. 76-77.

A jury convicted Ballard of two counts of robbery as Class B felonies. The pre-sentence investigation report revealed that Ballard has an extensive criminal history, including convictions for the federal felonies of attempting to obtain the property of a bank by extortion and attempting extortion by threat of force. In addition, Ballard pled guilty to Class B felony criminal confinement in 2005 and was sentenced to eighteen years with eight years suspended. He was still on probation for that offense when he committed the robberies in this case. At the time of sentencing, Ballard had robbery charges pending in Monroe and Madison Counties.

During the pre-sentence investigation interview, Ballard told the probation officer completing the interview that the proceedings leading to his conviction were "funny." Appellant's App. p. 342. Specifically, he explained that he would like to have all the money the State spent on his trial. He also stated that he "hated cops" and thought the criminal-justice system was "a joke." Ballard chuckled when he told the interviewer that he was "not a terrorist . . . yet." *Id.* The probation officer completing the report determined that Ballard "possesses substantial criminal attitudes [and] shows disdain for law enforcement and the justice system as a whole." *Id.* Ballard blamed his criminal behavior on medicine he took for bronchitis in the 1990's.

Following a sentencing hearing, the trial court sentenced Ballard to twenty years for each conviction, to run consecutively for a total sentence of forty years. Ballard appeals his convictions and sentence.

**Discussion and Decision**

**I. Severance**

Ballard argues that he was entitled to severance of the two robberies as a matter of right, and, in the alternative, that even if no right to sever existed, the trial court erred in denying his motion to sever. Indiana Code section 35-34-1-11(a) provides defendants with the right to severance where "two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character." As the statute explicitly states, severance is required as a matter of right under this provision only if the sole ground for joining is that the offenses are of a same or similar character. *Hall v. State*, 870 N.E.2d 449, 461 (Ind. Ct. App. 2007), *trans. denied*.

If, however, the offenses are joined as being part of a single scheme or plan, it is within the trial court's discretion to grant the severance when it is "appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." I.C. § 35-34-1-11(a). *See Harvey v. State*, 719 N.E.2d 406, 409 (Ind. Ct. App. 1999). Crimes will be considered part of a single plan or scheme when there is evidence linking the crimes by a common modus operandi. *Id.* Modus operandi "refers to a pattern of criminal behavior so distinctive that separate crimes may be recognized as the work of the same wrongdoer." *Goodman v. State*, 708 N.E.2d 901, 903 (Ind. Ct. App. 1999). The methodology of the crimes must be strikingly similar and unique in such a way as to attribute the crime to a single person. *Id.* Unlike *Goodman*, where we did not find a pattern among the thefts of items over a one-month period in rural Greene County to be distinctive, we do find a

8

distinct pattern among the two robberies in this case so as to suggest they were part of a single scheme or plan to rob.

Here, both robberies took place at approximately the same time of day at two different branches of the same business in Terre Haute just a few weeks apart. The robber pointed a dark handgun at both employees, told them to fill a bag with money, and told them to sit down, usually at the back of the store, as he left each center. He wore dark sunglasses and jeans at both robberies. These similarities are sufficient to show a distinctive pattern of criminal behavior. Ballard was therefore not entitled to severance as a matter of right.

Because Ballard was not entitled to severance as a matter of right, we must next determine whether the trial court erred in denying his motion to sever. When determining whether to grant severance in a case where there is no automatic right, a trial court considers the number of offenses charged, the complexity of the evidence to be offered, and whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. Ind. Code § 35-34-1-11(a). Whether charges are severed is within the sound discretion of the trial court and will be upheld absent an abuse of that discretion. *Harvey*, 719 N.E.2d at 409. Ballard must also show that in light of what actually occurred at trial, the denial of separate trials subjected him to prejudice. *Id.*

Our review of the evidence reveals that various witnesses testified about each of the two robberies. Each witness was clear in his or her testimony as to which robbery his or her testimony related to. The evidence was not complex, and the trier of fact would have been able to apply the law intelligently as to each offense. Ballard has failed to make a

9

showing that the complexity of the evidence rendered the jury incapable of rendering a verdict or that he was prejudiced by the joinder of the charges. The trial court did not abuse its discretion in denying Ballard's motion to sever.

## II. Admission of Evidence

Ballard also argues that the trial court erred in admitting evidence. Specifically, he argues that the trial court erred in admitting into evidence testimony about additional Cash Advance robberies for which he was not charged, as well as a gun found during a search of his bedroom at his sister's house in Texas. The trial court is afforded wide discretion in ruling on the admissibility of evidence. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). We review evidentiary decisions for an abuse of discretion and reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

### A. Evidence of Other Robberies

Ballard first argues that the trial court abused its discretion in admitting evidence of the robberies for which he was not charged. Admission of evidence of other acts of misconduct is governed by Indiana Evidence Rule 404(b), which provides:

(1) Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion, the person acted in accordance with the character.
(2) This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . .

This rule was designed to prevent a jury from assessing a defendant's present guilt on the basis of past propensities. *Allen v. State*, 720 N.E.2d 707, 711 (Ind. 1999). When assessing the admissibility of evidence pursuant to Evidence Rule 404(b), the trial court must 1) determine whether the evidence of crimes, wrongs, or other acts is relevant to a

10

matter at issue other than the defendant's propensity to commit the charged act, and 2) balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Wilhelmus v. State*, 824 N.E.2d 405, 414 (Ind. Ct. App. 2005).

Here, the trial court concluded that evidence of the uncharged misconduct was admissible for the purpose of identity. The identity exception to the general prohibition on propensity evidence is crafted primarily for signature crimes with a common modus operandi. *Id.* at 415. As previously explained, modus operandi refers to a distinctive pattern of criminal behavior where crimes may be recognized as the work of the same wrongdoer. *Goodman*, 708 N.E.2d at 903. The exception's rationale is that the crimes, or the means used to commit them, were so similar and unique that it is highly probable that the same person committed all of them. *Wilhelmus*, 824 N.E.2d 405.

Here, all of the robberies were quite similar. They all occurred during the same time of day within a month of one another at cash-advance stores in central Indiana. In every instance, the robber pointed a handgun at the employee and told her to fill his bag with money. He sent employees to the back of the store where possible when he left. The robber frequently wore aviator sunglasses and either a hooded sweatshirt or jacket or a fisherman's hat. These similarities are substantial and unique enough to be relevant in establishing identity. *See Lockridge v. State*, 172 Ind. App. 141, 359 N.E.2d 589, 593 (1977) (noting the similar circumstances surrounding the robberies, which occurred in a short span of time, were relevant to the issue of identity). The trial court did not err in admitting this evidence pursuant to the identity exception under Evidence Rule 404(b).

11

We must now balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *See Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997). In *Embry v. State*, 923 N.E.2d 1, 10 (Ind. Ct. App. 2010), *trans. denied*, this Court found it significant that the trial court issued a limiting instruction and admonishment to the jury that 404(b) evidence of prior domestic violence could not be considered proof that the defendant committed a crime similar to the 404(b) acts. This action by the trial court supported a finding that the trial court had not abused its discretion by admitting the 404(b) evidence. *Id.*

Likewise, here, the trial court issued a limiting instruction and admonishment to the jury regarding the 404(b) evidence before each witness testified about the uncharged crimes. As the jury is presumed to have followed the trial court's instruction, and because Ballard has not provided any evidence overcoming this presumption, we find no abuse of discretion in the trial court's admission of the 404(b) evidence. *See id.*

### B. Gun

Ballard also contends that the trial court erred in admitting into evidence the gun found during a search of his sister's Texas home. Specifically, he argues that the warrantless search of the residence violated his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Ballard, however, has waived appellate review of this issue because he failed to make a contemporaneous objection when the gun was admitted into evidence at trial. *See Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (stating that the failure to make a

contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal).

Waiver notwithstanding, even if the trial court erred in admitting the evidence, the error was harmless. Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party. *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012), *reh'g denied*. We look to the probable impact on the factfinder to determine the effect of the evidentiary ruling on a defendant's substantial rights. *Id.* The improper admission of evidence is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction. *Id.* Moreover, any error in the admission of evidence is harmless if the same or similar evidence has been admitted without objection or contradiction. *Id.*

Here, McMillin and Lien both identified Ballard and testified that he pointed a handgun at them during the robberies. He was also identified by his license-plate number after he was seen getting into his Hyundai following one of the robberies. This car was found at his sister's house in Texas. The Indiana license plate and Hyundai identification logos had been removed, and a counterfeit registration and inspection sticker as well as Ford identification logos were attached to the car. Because similar evidence was admitted without objection and there is substantial evidence of guilt that satisfies us that there is no substantial likelihood that the gun contributed to Ballard's conviction, any error in the admission of the gun was harmless.

13

**III. Sentencing**

The trial court sentenced Ballard to twenty years for each conviction, to run consecutively for a total sentence of forty years. Ballard argues that the trial court failed to consider a mitigating circumstance that is supported by the record, and that his sentence is inappropriate in light of the nature of the offenses and the character of the offender.

*A. Mitigating Circumstance*

Ballard contends that the trial court abused its discretion in sentencing him because it failed to find as a mitigating circumstance that these offenses neither caused nor threatened serious harm to a person or property. Specifically, Ballard argues that the "only weapon which the State identified as belonging to Ballard was the plastic bb gun found under the pillow of the room where Ballard allegedly slept. The trigger of the bb gun was broken, so it may not have even been operable." Appellant's Br. p. 34.

A trial court's sentencing order is reviewed on appeal for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court abuses its discretion when it omits mitigating factors that are clearly supported by the record and advanced for consideration. *Id.*

Although a trial court must consider the mitigating factors presented by a defendant, the trial court is not required to find that any mitigating factors exist. *Harlan v. State*, 971 N.E.2d 163, 170 (Ind. Ct. App. 2012). The trial court is also not obligated to explain why

any mitigating factors do not exist. *Anglemyer*, 868 N.E.2d at 493. A defendant who claims that the trial court failed to identify or find a mitigating factor must establish that the mitigating evidence was both significant and clearly supported by the record. *Id.*

Our review of the evidence reveals that Ballard pointed a weapon at his victims and ordered them to comply with his demands. This was a threat of serious harm to persons because even BB guns can be considered deadly weapons. *Merriweather v. State*, 778 N.E.2d 449, 457 (Ind. Ct. App. 2002). The trial court did not err in failing to identify the lack of threatened harm to a person or property as a significant mitigating factor.

### B. Inappropriate Sentence

Ballard also argues that his sentence is inappropriate. The Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decisions. *Brown v. State*, 10 N.E.3d 1, 4 (Ind. 2014). We implement this authority through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence in inappropriate in light of the nature of the offense and the character of the offender. *Id.* Ballard bears the burden on appeal of showing us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

Concerning the nature of the offenses, Ballard entered two separate businesses, pointed a gun at the employees, and demanded money. Although these offenses are not particularly egregious where the crimes were brief and no one was injured, it is Ballard's character that militates against any downward revision in his sentence. Specifically, Ballard has an extensive criminal history, including convictions for the federal felonies of

15

attempting to obtain the property of a bank by extortion and attempting extortion by threat of force. In addition, Ballard pled guilty to Class B felony criminal confinement in 2005 and was sentenced to eighteen years with eight years suspended. He was still on probation for that offense when he committed the robberies in this case. At the time of the sentencing, Ballard had robbery charges pending in Monroe and Madison counties. Clearly, Ballard has not reformed his criminal behavior despite his numerous past contacts with the criminal-justice system. *Abbott v. State*, 961 N.E.2d 1016, 1020 (Ind. 2012).

Further, during his pre-sentence investigation interview, Ballard chuckled when he told the interviewer that he was not a terrorist—yet. The probation officer completing the report determined that Ballard "possesses substantial criminal attitudes [and] shows disdain for law enforcement and the criminal justice system as a whole." Appellant's App. p. 342. In light of the nature of the offenses and his character, Ballard has failed to persuade us that his sentence is inappropriate.

Affirmed.

FRIEDLANDER, J. and MAY, J. concur.