Cedric WILKERSON, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 48A04–9907–PC–314.

Court of Appeals of Indiana.

May 19, 2000.

Susan K. Carpenter, Public Defender of Indiana, Anne–Marie Alward, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Petitioner, Cedric Wilkerson (Wilkerson), appeals the denial of his Petition for Post–Conviction Relief.

We reverse and remand with instructions.

### ISSUES

Wilkerson raises two issues on appeal, which we restate as follows:

1. Whether the post-conviction court erred when it concluded that Wilkerson's post-conviction action was barred by laches.

2. Whether Wilkerson received ineffective assistance of trial and appellate counsel.

### FACTS AND PROCEDURAL HISTORY

On August 5, 1985, Wilkerson was charged with rape, criminal deviate conduct, confinement, and robbery, with regard to an assault on T.S. that occurred on July 8, 1985. Under the same cause number, Wilkerson was also charged with rape, criminal deviate conduct, and confinement with regard to an assault on A.W. that occurred on July 25, 1985. Both assaults occurred in Anderson, Indiana. A jury trial began on August 4, 1987, and on August 14, 1987, Wilkerson was convicted on all charges. At trial, T.S. was unable to identify her assailant; however, A.W. identified Wilkerson as her assailant. On September 14, 1987, Wilkerson was sentenced to forty (40) years for the crimes committed on T.S. and forty (40) years for the crimes committed on A.W. The sentences were ordered to run consecutively, for a total sentence of eighty (80) years.

We affirmed this conviction on November 15, 1990. On September 20, 1993, Wilkerson filed a *pro se* Petition for Post–Conviction Relief. On October 8, 1993, the State filed its Answer to Wilkerson's Petition. On October 22, 1993, the State Public Defender entered her appearance and on April 22, 1998, Wilkerson filed his Motion for Leave to Amend *Pro Se* Petition for Post–Conviction Relief. On April 22, 1998, the State filed a response to the amended petition raising the affirmative defenses of laches, waiver, and res judicata. A post-conviction hearing was held on February 10, 1999, and on June 10, 1999, Special Judge Culver denied Wilkerson's Petition.

### DISCUSSION AND DECISION

#### I. *Standard of Review*

A post-conviction petition under Ind. Post–Conviction Rule 1 is a quasi-civil remedy, and, as such, the petitioner bears

the burden to prove by a preponderance of the evidence that he or she is entitled to relief. *Mato v. State,* 478 N.E.2d 57, 60 (Ind.1985); Ind. Post–Conviction Rule 1(5). On appeal from the denial of a petition for post-conviction relief, we neither reweigh the evidence nor judge the credibility of the witnesses. *Montano v. State,* 649 N.E.2d 1053, 1056 (Ind.Ct.App.1995), *trans. denied.* To prevail on appeal, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995), *reh'g denied.* It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. *Id.* at 1120.

 The purpose of a petition for post-conviction relief is to provide a means for raising issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Carrington v. State,* 678 N.E.2d 1143, 1146 (Ind.Ct.App.1997), *trans. denied.* Post-conviction procedures are reserved for subsequent collateral challenges and may not provide a "super appeal" for the convicted. *Weatherford v. State,* 619 N.E.2d 915, 916 (Ind.1993), *reh'g denied.* When the petitioner has already been afforded the benefit of a direct appeal, post-conviction relief contemplates a rather small window for further review. *Montano,* 649 N.E.2d at 1056. Thus, in general, if an issue was available on direct appeal but not litigated, it is deemed waived. *Madden v. State,* 656 N.E.2d 524, 526 (Ind.Ct.App.1995), *trans. denied. But see Woods v. State,* 701 N.E.2d 1208, 1220 (Ind.1998), *reh'g denied, cert. denied,* (holding that "a Sixth Amendment claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in postconviction-proceedings.").

## II. *Laches*

 The post-conviction court concluded that Wilkerson's Petition for Post–Convic-

tion Relief was barred by the doctrine of laches. Wilkerson argues that the State presented insufficient evidence to prevail on its laches claim. We agree.

 While post-conviction relief may be available at any time, the right to relief may be directly or impliedly waived and the State may raise the affirmative defense of laches. *Lile v. State,* 671 N.E.2d 1190, 1194 (Ind.Ct.App.1996).

> [L]aches ... is the neglect for an unreasonable or unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. It is an implied waiver arising from knowledge of existing conditions and an acquiescence in them, the neglect to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to the adverse party and·thus operating as a bar in a court of equity.

*Perry v. State,* 512 N.E.2d 841, 842 (Ind. 1987) (citing *Frazier v. State,* 263 Ind. 614, 616–617, 335 N.E.2d 623, 624 (1975)).

 To prevail on a claim of laches the State has the burden of proving by a preponderance of the evidence that Wilkerson unreasonably delayed seeking post-conviction relief and that the State has been prejudiced by the delay. *Williams v. State,* 716 N.E.2d 897, 901(Ind.1999). The burden of proving laches rests entirely upon the State. *Blunt–Keene v. State,* 708 N.E.2d 17, 19 (Ind.Ct.App.1999). However, in reviewing a laches claim, we will not reweigh the evidence nor judge the credibility of the witnesses and we consider only that evidence most favorable to the judgment. *Id.* "If the determination of the court is supported by substantial evidence of probative value, the judgment will be affirmed." *Id.*

Here, the State argues that Wilkerson's delay in filing his Petition for Post–Conviction Relief was unreasonable and prejudiced the State. Wilkerson's direct appeal

was decided on November 15, 1990, and on January 14, 1991, Wilkerson's Petition to Transfer was denied. Wilkerson filed his Petition for Post–Conviction Relief on September 20, 1993. Specifically, the State argues that because the complaining witness, A.W., had died since the trial, the State would be severely prejudiced on retrial. A.W. was the only witness who could identify Wilkerson as the man who had raped her. T.S., the other rape victim, was unable to identify her assailant.

At the hearing on Wilkerson's Petition for Post–Conviction relief, neither the State nor Wilkerson presented any witness testimony. However, Wilkerson entered five exhibits including the trial transcript, an Affidavit of Wilkerson's trial and appellate counsel, Wilkerson's Appellant's Brief on his direct appeal, the Memorandum Decision on Wilkerson's direct appeal, and A.W.'s death certificate. Thereafter, both counsel presented closing arguments.

Thus, the death certificate of A.W. was the only evidence presented in support of the State's claim of prejudice in regard to its laches defense. The State was required to prove by a preponderance of the evidence that Wilkerson's delay was unreasonable; however, the State failed to present any evidence on this issue. "It is axiomatic that the arguments of counsel are not evidence.... It is likewise axiomatic that a complete failure of proof on an element of a claim is fatal to that claim." *Blunt–Keene,* 708 N.E.2d at 19.

Nevertheless, the trial court found unreasonable delay although no evidence was presented by the State on this issue. To prove that Wilkerson's delay was unreasonable, the State was required to present evidence to show that Wilkerson had knowledge of the defects in his conviction and his means to seek relief. *Perry,* 512 N.E.2d at 845. Proof of Wilkerson's knowledge may be inferred by the factfinder by looking at such factors as whether Wilkerson had repeated contacts with the criminal justice system, consultation with attorneys and was incarcerated in a penal institution with legal facilities. *Id.* "The court is not obligated to infer knowledge from any particular set of circumstances, nor is it bound to accept petitioner's assertions of ignorance. The State must, however, present some objective facts from which the court may draw a reasonable inference of knowledge." *Id.*

The trial court found that Wilkerson was incarcerated at a penal institution with legal facilities. Notwithstanding this conclusion, there was no evidence presented by the State as to where Wilkerson was incarcerated during the time period at issue, or whether Wilkerson had access to legal facilities at that penal institution. Further, there was no evidence presented by the State that Wilkerson knew of or had been informed of his right to file a petition for post-conviction relief or that he had ever filed such a petition in the past. Wilkerson was represented by the same attorney throughout this matter, in the trial court and on direct appeal. There was no evidence that he had any further contact with counsel after his appeal was concluded. The trial court also concluded that Wilkerson had significant contacts with the criminal justice system in this particular case. If we are to accept this conclusion of the trial court, then it could be said that every defendant who has a trial and direct appeal has had significant contacts with the criminal justice system and thus, knowledge of post-conviction remedies. The trial court further concluded that Wilkerson's *pro se* Petition demonstrated that he had some legal knowledge. However, the State again presented no evidence that Wilkerson actually wrote this Petition himself. Wilkerson's counsel argues that it was highly unlikely that Wilkerson wrote this petition in light of his low verbal I.Q. of 78 and his learning disability. Finally, the trial court further found that Wilkerson was aware of A.W.'s advanced age and in light of her age, his delay in filing the PCR was unreasonable. A.W. was 66 years old at the time of trial and 72 years old at the time of her death.

.She died on March 11, 1992, fourteen (14) months after our supreme court denied Wilkerson's Petition to Transfer. It we were to agree with the State's position that Wilkerson's Petition should have been filed prior to A.W.'s death, Wilkerson would have had to file his Petition within fourteen (14) months after the denial of transfer, which was not reasonable under the circumstances of this case.

Despite the trial court's efforts to find support for the State's defense of laches, the State failed to present any evidence in support of its claim that the delay was unreasonable and only submitted A.W.'s death certificate in support of its claim of prejudice. The State was required to prove both unreasonable delay and prejudice. Thus, the evidence is insufficient to support the State's affirmative defense of laches. See *Williams*, 716 N.E.2d at 901. Therefore, the post-conviction court's finding that the State had met its burden of proving laches is clearly erroneous.

### III. *Ineffective Assistance of Counsel*

Wilkerson next argues that he received ineffective assistance of trial and appellate counsel. Essentially, Wilkerson argues that his trial counsel was ineffective because he failed to move for severance of the charges, he allowed evidence of other uncharged sexual assaults to be introduced at trial, and he failed to object to A.W.'s in-court identification of Wilkerson. Wilkerson was represented by the same counsel in the trial court and on direct appeal, and thus, the issue of ineffective assistance of trial counsel was not raised in his direct appeal. Consequently, the failure to raise the issue of ineffective trial counsel on appeal is the basis for Wilkerson's claim of ineffective assistance of appellate counsel.

The standard by which we review claims of ineffective assistance of counsel is well settled. In order to prevail on a

claim of this nature, a defendant must satisfy a two prong test: (1) a showing that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) a showing that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind.1997) *reh'g denied, cert. denied* (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

However, we need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. To establish prejudice, Wilkerson must first demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would be different. *Smith v. State*, 689 N.E.2d 1238, 1244 (Ind.1997). Isolated poor strategy or bad tactics do not necessarily amount to ineffective assistance of counsel unless, taken as a whole, the defense was inadequate. *Brown v. State*, 698 N.E.2d 1132, 1139 (Ind.1998), *reh'g denied, cert. denied*. Furthermore, we "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

### *Motion for Severance of Charges* [1]

Wilkerson argues that he was prejudiced by his trial counsel's failure to move for severance of the charges against him. Specifically, he argues that he was entitled to a severance of the charges re-

1. Because we conclude that Wilkerson's counsel was ineffective due to his failure to move for severance of the charges against Wilkerson, we do not need to address whether Wilkerson's counsel was ineffective for allow-

ing evidence of other uncharged sexual assaults to be introduced at trial or as a result of his alleged failure to object to A.W.'s in-court identification of Wilkerson.

lating to the attack on T.S. from the charges relating to the attack on A.W., and his counsel's failure to move for a severance allowed the State to bolster its weak case with regard to the attack on T.S. with evidence of the attack on A.W. T.S. could not identify her attacker but A.W. identified Wilkerson. Additionally, Wilkerson argues that even if he was found guilty in separate trials regarding the charges concerning the attack on T.S. and the charges concerning the attack on A.W., the sentences imposed would have had to have run concurrently rather than consecutively.

With regard to Wilkerson's trial counsel's failure to seek severance, the trial court concluded that: "[he] may or may not have prejudiced his client. However, this Court cannot conclude as a matter of law that it was fundamental error to fail to seek severance." (R. 92–93).

Indiana Code provides that:

(a) Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Ind.Code § 35–34–1–9(a). However, "whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." Ind.Code § 35–34–1–11(a). This right is automatic and the trial court has no discretion to deny the defendant's motion for severance. *Pardo v. State*, 585 N.E.2d 692, 693 (Ind. Ct.App.1992). Wilkerson contends that the charges relating to the assault of the two victims were joined because they are of the same or similar character and there-

fore, if requested, he was entitled to a severance of the charges as a matter or right.

However, the State contends that the charges were joined because they were "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." *See* Ind.Code § 35–34–1–9(a). In this situation, a severance shall be granted "whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering: (1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." Ind.Code § 35–34–1–11(a).

Charges may be sufficiently connected as a "single scheme or plan" to justify joinder if the State can establish that: they are connected by a distinctive nature; a common *modus operandi* linked the crimes; and that the same motive induced the criminal behavior. *Ben–Yisrayl v. State*, 690 N.E.2d 1141, 1145 (Ind.1997), *reh'g denied, cert. denied; Henderson v. State*, 647 N.E.2d 7, 10 (Ind.App.1995), *reh'g denied, trans. denied.* "Modus operandi means literally 'method of working,' and refers to a pattern of criminal behavior so distinctive that separate crimes may be recognized as the work of the same wrongdoer." *Goodman v. State*, 708 N.E.2d 901, 903 (Ind.Ct.App.1999) (citation omitted).

Mere repetition of similar crimes does not by itself warrant admission of the evidence of those crimes under the modus operandi rule. In order for the modus operandi rule to serve its intended purpose, the inquiry must be, "Are these crimes so strikingly similar that one can say with reasonable certainty that one and the same person committed them?" Not only must the methodology of the two crimes be strikingly similar, but the method must be unique in ways

which attribute the crimes to one person. Given the inherent similarities in all sex crimes, the common use of disguises, and the frequent late night or early morning timing of residential intrusions, we can not [sic] say that these attacks reveal a distinctive modus operandi.
*Penley v. State,* 506 N.E.2d 806, 810 (Ind. 1987).

Here, the connection between the two crimes at issue is limited. Both are sex crimes that occurred in Anderson, Indiana; however, they occurred three weeks apart, at different times of the day, at different locations, to different victims. Further, different weapons were used and one victim was robbed while the other was not. The assault on T.S. occurred on July 8, 1985, at 1:00 a.m. She awoke to find a man straddling her with scissors at her throat. He had entered her apartment through a window and was wearing nothing except a shirt covering his face. He forced her to submit to oral sex followed by sexual intercourse. He then demanded money and emptied her purse taking a cigarette, a cigarette lighter, money, and some food stamps. T.S. was unable to identify her attacker. The assault on A.W. occurred at approximately 10:30 p.m. on July 25, 1985. The man broke in thru a window, grabbed her, and forced her to submit to intercourse and oral sex. During the attack, Wilkerson was dressed and held a switchblade to her neck. Also, A.W. had seen Wilkerson on two occasions prior to the attack, and on one occasion he offered her $100 to have intercourse. A.W. identified Wilkerson as the man who raped her.

There is no evidence of a scheme or plan here and the crimes were not connected by a distinctive nature or a common *modus operandi.* Although both crimes were sexual assaults that occurred in Anderson, Indiana, by a perpetrator gaining entry to the victim's home through a window late at night, the crimes were not so strikingly similar as to say that they were part of a "single scheme or plan." Instead, the

charges were joined because the offenses were of " the same or similar character." Ind.Code § 35–34–1–11(a)(1). Thus, if Wilkerson had move to sever the charges, the trial court would have lacked discretion to deny such a motion in this case. *See Goodman,* 708 N.E.2d at 903; *Clark v. State,* 695 N.E.2d 999, 1003 (Ind.Ct.App. 1998); and *Pardo,* 585 N.E.2d at 695.

 Consequently, Wilkerson argues that he was prejudiced as a result of his counsel's failure to move for severance of the charges. He argues that if he had been tried separately, the evidence would have been insufficient to convict him of the charges relating to the attack of T.S. because T.S was unable to identify her attacker. Thus, the only evidence against Wilkerson with regard to the assault on T.S. was his confession and two hairs found on T.S., the analysis of which revealed that Wilkerson could not be excluded as a potential source. However, the source of the hairs could not be positively identified. Additionally, serologic examination of seminal stains found on T.S. and on her clothing were inconclusive. The question thus becomes whether T.S.'s testimony and the hair evidence was sufficient evidence to support the admission of Wilkerson's confession. "For a confession to be admitted into evidence, the State must establish the corpus delicti. The purpose for requiring proof of the corpus delicti is to prevent the admission of a defendant's confession to a crime that never occurred." *Weida v. State,* 693 N.E.2d 598, 600 (Ind. Ct.App.1998), *trans. denied.* However, each element of the crime need not be proven beyond a reasonable doubt; the evidence need only provide an inference that a crime was committed. *Jones v. State,* 701 N.E.2d 863, 867 (Ind.Ct.App. 1998). "To support the introduction of a defendant's confession into evidence, the corpus delicti of the crime must be established by independent evidence of 1) the occurrence of the specific kind of injury and 2) someone's criminal act as the cause of the injury." *Id.* The corpus delicti may

be established by circumstantial evidence alone. *Weida*, 693 N.E.2d at 600. "Once properly admitted, a confession is direct evidence of guilt of the criminal activity admitted." *Jones*, 701 N.E.2d at 867. Furthermore, "[i] ndependent proof of the defendant's identity as the perpetrator of the crime is usually not required because such proof, along with the other elements of corpus delicti, would constitute proof of the whole crime and would eliminate the value of confessions." *Hickman v. State*, 654 N.E.2d 278, 283 (Ind.Ct.App.1995). Thus, even if Wilkerson had been tried separately, it cannot be said that there would have been insufficient evidence to support his conviction. T.S.'s testimony that she had been raped and robbed, along with the hair evidence, established the corpus delicti enabling Wilkerson's confession to be admitted into evidence.

However, Wilkerson further argues that if he had been tried separately concerning the assault of T.S. and the assault on A.W., and had been found guilty of all charges after separate trials, his sentences would have been ordered to be served concurrently rather than consecutively. The applicable statute at the time provided that:

Consecutive and concurrent terms. – (a) Except as provided in subsection (b), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively.

(b) If, after being arrested for one (1) crime, a person commits another crime:

(1) before the date the person is discharged from probation, parole, or a term of imprisonment imposed for the first crime; or

(2) while the person is released:

(A) upon the person's own recognizance;

(B) on bond;

the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

Ind.Code § 35–50–1–2 (as amended by P.L.330–1987).

This statute has been interpreted to mean that a trial court has authority to impose consecutive sentences only when it is contemporaneously imposing two or more sentences. *Kendrick v. State*, 529 N.E.2d 1311, 1312 (Ind.1988); *See also Seay v. State*, 550 N.E.2d 1284, 1289 (Ind. 1990).[2]

Trial courts, in the absence of express statutory authority, cannot order consecutive sentences, i.e., the commencement of a sentence cannot, in the absence of express statutory authority, be postponed.

. . .

The authority to postpone the commencement of a sentence, i.e., to order consecutive sentences, is granted by I.C. Sec. 35–50–1–2.

. . .

The general authority is limited to those occasions when a court is meting out two or more terms of imprisonment. If a court is contemporaneously imposing two or more sentences, it is granted the general statutory authority to order them to be served consecutive to one another. Section (a) does no more than this.

*Kendrick*, 529 N.E.2d at 1312.

Thus, if the charges relating to the attack on T.S. had been tried separately from the charges relating to the attack on A.W., and Wilkerson was convicted in both cases, the trial court could not have ordered the sentences to run consecutively.

**2.** Although not applicable to this case as Wilkerson was sentenced in 1987, the 1994 amendment to Ind.Code § 35–50–1–2 has overturned the contemporaneity requirement set forth in *Kendrick* and *Seay*. *Weaver v. State*, 664 N.E.2d 1169, 1170 (Ind.1996); *Elswick v. State*, 706 N.E.2d 592, 594 (Ind.Ct. App.1999).

Here, however, because the charges were tried together, Wilkerson received consecutive sentences of forty (40) years for each incident, for a total sentence of eighty (80) years. Therefore, Wilkerson has established that he was prejudiced in sentencing by his counsel's failure to seek severance of the charges because he received consecutive sentences rather than concurrent sentences.

Because Wilkerson has established prejudice in sentencing as a result of his counsel's failure to move for severance of the charges, we must next examine whether his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms. *Moore,* 678 N.E.2d at 1261. Wilkerson's trial counsel testified via Affidavit that he could "recall no strategy reason for [his] failure to seek severance of the two counts of Rape against Mr. Wilkerson." (R. 103). He also testified that he "was unaware of any possible repercussions at sentencing." (R. 103). Although, Wilkerson's counsel testified that he could recall no strategy reason for not moving for severance, the trial court concluded that his failure to request severance may have been a strategy decision in light of the facts. The trial court further concluded that counsel's strategy not to sever the charges could have been due to the depraved sexual instinct rule that would have allowed evidence of both offenses to be presented at separate trials,[3] or because the trials were similar only in the nature of the offense, trying the cases together allowed for the possible argument that the crimes were committed by two individuals rather than the defendant.

Despite the trial court's efforts to come up with a strategy reason for Wilkerson's counsel's failure to seek severance, the direct testimony of Wilkerson's counsel was that he recalled no strategy reason for not seeking severance. Further, Wilkerson's counsel testified that he was unaware of any sentencing repercussions as a result of not severing the charges. In light of this testimony, we find the post-conviction court's conclusions erroneous. Consequently, we conclude that Wilkerson received ineffective assistance of counsel as a result of his counsel's failure to move for severance in this case. *See Clark,* 695 N.E.2d at 1003 (Ind.Ct.App.1998) (Defendant was entitled to have his offenses severed as a matter of right, and his counsel's failure to do so amounted to deficient performance.)

However, as discussed above, the only prejudice suffered by Wilkerson as a result of ineffective assistance of his counsel was his sentencing. Therefore, in order to cure this prejudice, we remand this case to the trial court with instructions that it vacate its Order directing Wilkerson to serve consecutive sentences for the offenses committed against the two victims and order the sentences be served concurrently.

## CONCLUSION

Based on the foregoing, we find that the trial court erroneously concluded that Wilkerson's Petition for Post Conviction Relief was barred by laches. Further, we conclude that Wilkerson received ineffective assistance of counsel due to his counsel's failure to move for severance of the charges against him and as a result suffered prejudice in sentencing. Therefore, we reverse and remand this case, and instruct the trial court to vacate the order directing Wilkerson to serve consecutive sentences.

3. Wilkerson's trial took place before our supreme court in 1992 abrogated the "depraved sexual instinct" exception to the general rule of the inadmissibility of prior bad acts. See *Lannan v. State,* 600 N.E.2d 1334, 1335 (Ind. 1992). Nevertheless, under this rule, the rape of an adult woman was not considered a manifestation of "depraved sexual instinct" while sodomy was. *Reichard v. State,* 510 N.E.2d 163, 165 (Ind.1987). Thus, had the cases been tried separately, the State may have been allowed to introduce evidence regarding the prior forced oral sex, but not the prior rape.

Reversed and remanded with instructions.

BAKER, J., and KIRSCH, J., concur.