## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 22 2016, 9:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

India Lane
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brent D. Mullis, <br> *Appellant-Petitioner*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent*. | November 22, 2016 <br><br> Court of Appeals Case No. <br> 03A04-1602-PC-203 <br><br> Appeal from the Bartholomew <br> Circuit Court <br><br> The Honorable Stephen R. <br> Heimann, Judge <br><br> Trial Court Cause No. <br> 03C01-0810-PC-2393 |

**Brown, Judge.**

[1]     Brent D. Mullis appeals the denial of his petition for post-conviction relief. Mullis raises one issue which we revise and restate as whether the post-conviction court erred in denying his petition for relief. We affirm.

*Facts and Procedural History*

[2]     The relevant facts as discussed in Mullis's direct appeal follow:

> On June 2, 2006, Columbus police investigated a burglary at the La Mode Hair Salon. A rock had been thrown through a window to gain entry, and several items had been removed, including money. The police found a shoe impression on a piece of glass, which they preserved for comparison.
>
> On June 5, 2006, Randy Hicks saw two men in front of the Yee Kee Chinese Restaurant in Columbus. Hicks observed one of the men throw something through one of the restaurant's windows, and both men entered the Yee Kee through the broken window. Hicks called 9-1-1, and Columbus police quickly responded. Mullis attempted to flee, but a K-9 unit apprehended him nearby. Peter Lankey was also apprehended in the vicinity. Hicks identified both men as the men he saw at the restaurant. Police also found a glove near the restaurant that matched a glove discovered close to where Mullis was apprehended. The owner of the restaurant found that various items had been disturbed, but that nothing of value had been taken.
>
> The police confiscated Mullis's shoes upon his arrest. The glass fragments found in the soles of the shoes were similar to the glass fragments collected from the broken window at the La Mode Salon and those collected from the Yee Kee Restaurant. Also, the sole of Mullis's left shoe matched the shoe impression on the La Mode Salon glass.

*Mullis v. State*, No. 03A01-0802-CR-41, slip op. at 2-3 (Ind. Ct. App. July 29, 2008).

[3]     On June 8, 2006, the State charged Mullis with two counts of burglary as class C felonies. *Id.* at 3. On June 12, 2006, the court appointed Attorney Aaron Edwards as Mullis's counsel. On September 27, 2006, the State alleged that Mullis was an habitual offender. After the court granted multiple continuances filed by Attorney Edwards and Mullis, the court granted Attorney Edwards's motion to withdraw on January 2, 2007, and appointed Attorney Daniel Schuetz as Mullis's counsel. On March 30, 2007, Attorney Schuetz filed a motion to continue, which the court subsequently granted. On April 3, 2007, Attorney David Nowak filed an appearance for Mullis, and the court later granted Attorney Schuetz's motion to withdraw. On June 11, 2007, Attorney Nowak filed a motion to continue, which the court later granted.

[4]     On October 15, 2007, the court held a hearing at which Mullis and Attorney Nowak were present, and the court informed Mullis that trial was set for October 30, 2007. On October 30, 2007, a jury trial began and Mullis's trial counsel was present, but Mullis was not. *Id.* at 4. Lankey, who had pled guilty to the burglary of the Yee Kee Restaurant, testified that he and Mullis had committed the burglary together. *Id.* at 5. On October 31, 2007, the jury found Mullis guilty as charged and found him to be an habitual offender. *Id.* The court entered judgment of conviction and issued a warrant for Mullis's arrest. *Id.* On November 19, 2007, Mullis was served with the warrant. *Id.* That same day, his trial counsel filed a motion to withdraw his appearance on the grounds

that Mullis had advised him by telephone that Mullis no longer desired his representation, that Mullis did not want him to appear at any future hearings, and that he did not want him to visit him in jail. *Id.* Mullis also sent the trial court a letter indicating that he was terminating his trial counsel's representation. *Id.*

[5] On December 12, 2007, the court held a sentencing hearing, determined that Mullis knowingly and voluntarily waived his right to counsel, and granted defense counsel's motion to withdraw his appearance. *Id.* at 6. The court sentenced Mullis to eight years for each burglary conviction, to be served consecutively, and added twelve years for the habitual offender finding, for an aggregate sentence of twenty-eight years. *Id.* at 7.

[6] On appeal, Mullis argued that the trial court abused its discretion in holding a trial in his absence and that the court improperly sentenced him. *Id.* at 2. We affirmed on the issues raised by Mullis.[1] *Id.*

[7] On October 14, 2008, Mullis filed a petition for post-conviction relief. On February 7, 2014, he filed an amendment to his petition and alleged that he

---

[1] The State raised the issue of whether the habitual offender enhancement was attached to a specific underlying offense, and we remanded for the trial court to attach the habitual offender enhancement to one of the burglary convictions. *Mullis*, slip op. at 2, 13.

received ineffective assistance of counsel in part because counsel failed to move the court for severance of the two separately filed burglary counts.[2]

[8] On November 5, 2015, the court held an evidentiary hearing. Attorney Nowak testified that he did not file a motion to sever the two burglaries because he did not think the motion would be granted and he did not want to give the State "another bite of the apple, so to speak . . . ." Post-Conviction Transcript at 12. When asked whether he thought that the jury would just "leapfrog to say, well, if they committed this one with this amount of evidence, then it only stands to reason that they would have committed the other one," Attorney Nowak answered that "there was a lot more evidence" and that "yes, that was all considered." *Id.* at 14. Attorney Nowak also testified that he felt that "with Mr. Mullis here and presenting him as a witness, allowing him to tell his story, that I could still poke holes in each . . . in the evidence from each case that . . . and that ability or the prospect of proceeding forward that way, posed less risk to him as opposed to doing it twice and in front of two different juries." *Id.* at 14-15.

[9] Attorney Nowak testified that he did not recall if he discussed the possibility of severing the charges with Mullis but was inclined to say that he did not. Attorney Nowak also testified that "I never discussed that alternative with him

---

[2] Mullis also argued that Attorney Nowak failed to move for a directed verdict as to Count II, which related to the La Mode Beauty Shop, on the grounds that the State presented insufficient evidence to support a conviction on that count. Mullis does not challenge the post-conviction court's denial of his petition as to this issue.

simply because by the time I had all the facts to make a determination on that issue . . . [h]e was never around to further discuss it." *Id.* at 17. When asked why he did not ask for a continuance and discuss the issue of severance with Mullis, Attorney Nowak testified that he looked at the case summaries, that it would be difficult to obtain a continuance, and that informing the trial court that Mullis failed to maintain contact with him could result in the trial court revoking his bond or taking other actions that would be detrimental to Mullis.

[10]     On cross-examination, Attorney Nowak testified that the offenses involved overlapping evidence and that the jury was going "to get the implication that something else happened that allowed the police to lay their hands on the shoes." *Id.* at 28-29. During cross-examination, the following exchange occurred:

> Q. But you primarily felt that it was just because of facing the Habitual Offender on two separate incidences, that was your strategic reason as to why you did not seek severance primarily?
>
> A. That and just, even without the Habitual, on two different cases. Once again, I thought I had a better shot at beating both cases in one trial as opposed to the mistake of . . . the saying two shots at him on separate trial.

*Id.* at 29. Attorney Nowak also testified that "if it had been severed, he would have been subject to the possibility in each case of a conviction on" the habitual

count.[3] *Id.* at 19. During redirect examination of Attorney Nowak, the following exchange occurred:

> A. Well, that . . . I don't understand why you would want to go there. If we're going to sever these cases, the whole point of severing them . . . [i]s so the jury gets no . . . has no link to the thought that he was involved in another crime.
>
> Q. Right.
>
> A. The . . . what you're asking me to do is to suggest to a jury that he was at least at the presence or at the scene of another crime. That's how he got the glass in his shoes. So, that line of questioning to me, totally defeats the purpose of the severance to start with because I got to say, you know, what if my client was just walking by this other crime scene. That's what I'm seeking to avoid in having it severed. It's better to attack both cases as a whole and be honest and straightforward with the jury and make your arguments, which quite frankly, I thought we did pretty well in his absence.

*Id.* at 37.

---

[3] The following exchange occurred:

> [Attorney Nowak]: . . . [A]dditional charges would have been filed and then if it had been severed, he would have been subject to the possibility in each case of a conviction on the underlying charge . . .
> Q. habitual count. . .
> A. The habitual count.

Post-Conviction Transcript at 19.

[11]     On December 31, 2015, the court denied Mullis's petition.  Specifically, the

court's order states:

> Mullis asserts that trial counsel was ineffective in that "Counsel
> failed to move the court for severance of the two separately filed
> burglary counts."  None of the three attorneys which represented
> him prior to or at trial requested that the counts be severed.  At
> the PCR hearing, trial counsel David Nowak testified that it was
> a strategic move not to attempt to separate the two burglary
> counts.  This was due in part to the fact that the State would have
> two bites at the apple to have Mullis convicted and with the
> Habitual hanging over his head, Mullis would be more exposed.
> The LaMode burglary occurred a couple of days prior to the Yee
> Kee burglary.  Mullis was apprehended fleeing from the Yee Kee
> burglary and a codefendant testified against Mullis.  Mullis'
> shoes were taken from him after he was apprehended fleeing after
> the Yee Kee burglary.  Nowak noted in his testimony that the
> shoes confiscated after Yee Kee tied him to the LaMode burglary
> and so the two intertwined.  The bottom of Mullis' tennis shoes
> contained glass which had been broken at LaMode and his
> shoeprint was found on a large piece of glass **inside of LaMode**.
>
> [Mullis's post-conviction counsel] argues that Mullis could have
> easily explained in testimony that he picked up that glass in his
> shoes by having walked on the sidewalk by LaMode after the
> burglary.  There are a number of problems with this argument.
> First and foremost, [Mullis's post-conviction counsel] has not
> offered any evidence that Mullis has ever indicated that Mullis
> had walked by the LaMode salon after the burglary where he
> could have picked up the glass.  Therefore, this argument is pure
> speculation.  Mr. Mullis has not provided an affidavit or
> testimony that this is how he picked up glass from LaMode in his
> shoe.  Recall that he did not appear at trial to testify at all.
> Second, the testimony by Detective Jason Maddix was that
> access to LaMode was gained by someone having thrown a large
> landscape stone through the glass window.  Trial Transcript p.

71.  The stone was found inside of the store, so it would have been thrown from outside to the inside.  Maddix also testified that there was glass inside the hair salon, but did not testify that there was glass out on the sidewalk.  In fact, in reviewing the photographic evidence, it shows how improbable it would have been for someone to have walked on the sidewalk outside of LaMode and picked up glass as a result of the rock having been thrown into LaMode.  In State's Exhibit 8, one can see that the entrance to LaMode has an alcove with the entrance door set back in and away from the sidewalk.  In State's Exhibit 7, it is clear that the plate glass window which was broken was one of the windows in the alcove, not a plate glass window out at the sidewalk.

Just as Mullis' counsel has speculated that Mullis may have been able to have testified that he picked up the LaMode glass by having walked past the hair salon sometime after the burglary, one could also speculate that the owner of the hair salon (who was called to the scene that night, [Trial Transcript p. 34.]) or a police officer may have testified that they had swept up any glass that was outside.  Mullis has a greater burden to bear in this PCR petition than to try to have courts speculate as to what Mr. Mullis may have testified to had he come to trial and testified.

Next, as it relates to this potential explanation by Mullis picking up glass in his shoe by walking down the sidewalk outside of La Mode after the burglary, this would not have explained how his shoe print was on a large broken piece of glass found <u>inside</u> of LaMode by the police during their investigation.  This shoe print found inside LaMode was positively identified by an Indiana State Police technician as having come from Mullis' shoe.  (Trial Transcript p. 253.)

Finally, while Nowak did not specifically note this as a reason for not severing the two counts as a strategic measure, he did testify that the trial was years ago and he did not have a specific

recollection of all of its details. He did not review the transcript in preparation for his testimony at the PCR hearing. The Court has reviewed the trial transcript for this Order. In reviewing it, it appears that the best chance that Mullis had of being acquitted of the Yee Kee crime was as a result of Nowak's cross-examination of Peter Lankey. Lankey had pled guilty to burglarizing the Yee Kee Restaurant with Mullis on June 5, 2006. Nowak cross-examined Lankey extensively about the plea agreement which Lankey had reached in exchange for his agreeing to testify on behalf of the State and against Mullis. This harmed Lankey's credibility. That harmed credibility was the only matter during the trial which was beneficial to Mullis. It may well have also assisted Mullis as it relates to the LaMode burglary had Mullis appeared at court and testified.

Mullis has failed to show that his trial counsel was ineffective for not requesting severance of the two burglary counts.

Appellant's Appendix at 52-54.

## *Discussion*

[12]     The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). A post-conviction petition is not a substitute for an appeal. *Id.* Further, post-conviction proceedings do not afford a petitioner a "super-appeal." *Id.* The post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Id.* If an issue was known and available but not raised on appeal, it is waived. *Id.*

[13]     We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-

conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[14] Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[15] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997).

[16] Mullis argues that Attorney Nowak was ineffective because Mullis was entitled to the severance of the charges as a matter of right as they were joined for trial solely on the ground that they were of the same or similar character, and that his trial counsel failed to give him the option of severance. He asserts that Attorney Nowak's reasons for failing to request severance were deficient, that the fact that a rock was used to break the windows in both crimes was not enough to prove a scheme or plan, and that the glass that matched Count II related to the hair salon would have been inadmissible because it was evidence

of an alleged crime used solely for the purposes of proving a weaker case with no substantial evidence. He asserts that there was no independent determination for each charge because the State used evidence from each to prove the other. Mullis relies on *Maymon v. State*, 870 N.E.2d 523 (Ind. Ct. App. 2007), *modified on reh'g on other grounds*, 875 N.E.2d 375, *trans. denied*, and *Wilkerson v. State*, 728 N.E.2d 239 (Ind. Ct. App. 2000), *reh'g denied*. He also argues that his trial counsel should have been aware that severance would have been a better outcome for sentencing because Mullis would have had to receive a concurrent sentence which would have been a total of twenty years instead of twenty-eight years.

[17] The State argues that Mullis was not entitled to severance of the two charges as a matter of right because the two burglaries were committed within three days of one another, both were committed against businesses in Columbus early in the morning, and both involved throwing a landscape rock through the window of the front door. The State argues that Mullis's reliance on *Maymon* and *Wilkerson* is misplaced.

[18] Ind. Code § 35-34-1-9 governs joinder of offenses and provides:

> (a) Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>
> > (1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

[19] Ind. Code § 35-34-1-11 governs severance of offenses and provides:

(a) Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

[20] The right to severance is automatic where the offenses are joined for a trial in the same indictment or information solely upon the ground that they are of the same or similar character. *Maymon*, 870 N.E.2d at 528. If, however, the offenses are joined as being part of a single scheme or plan, it is within the trial court's discretion to grant a severance when it is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense. *Id.*

[21] In *Maymon*, the defendant was charged with committing four burglaries with four separate victims over a span of almost three months. *Id.* The first charged

burglary was achieved by chiseling and breaking the locked back door, the second charged burglary occurred eleven days later and the defendant did not enter the home when the victim confronted him as he approached the front door, the third charged burglary occurred over two months later and involved a man knocking on the door of the home and then entering when no one was home, and the fourth charged burglary occurred two days later when Maymon attempted to enter the home through an unlocked door but was confronted by the homeowner. *Id.* We held that the facts of the charges did not demonstrate that Maymon committed a series of connected acts or that the incidents were part of a single scheme or plan. *Id.* Rather, Maymon was charged with committing four burglaries with four separate victims over a span of almost three months. *Id.* We agreed with the defendant's argument that if a severance had been requested, the evidence of the burglaries where thefts occurred would not have been admissible in his trials for the burglaries where thefts did not occur. *Id.* (citing *Wickizer v. State*, 626 N.E.2d 795 (Ind. 1993)).

[22] In *Wilkerson*, the two charged crimes were sex crimes that occurred in Anderson, Indiana, three weeks apart at different times of the day, at different locations, to different victims. 728 N.E.2d at 247. Different weapons were used and one victim was robbed while the other was not. *Id.* The assault on the first victim occurred at 1:00 a.m. when the victim awoke to find a man straddling her with scissors at her throat. *Id.* The man had entered her apartment through a window and was wearing nothing except a shirt covering his face. *Id.* He forced her to submit to oral sex followed by sexual intercourse

and then demanded money and emptied her purse. *Id.* The victim was unable to identify her attacker. *Id.* The second assault occurred on a different victim seventeen days later when a man broke in through a window, grabbed her, and forced her to submit to intercourse and oral sex. *Id.* During the attack, Wilkerson was dressed and held a switchblade to her neck. *Id.* The second victim had seen Wilkerson on two occasions prior to the attack, and on one occasion he offered her $100 to have intercourse. *Id.* The second victim identified Wilkerson as the man who raped her. *Id.*

[23] We held that charges may be sufficiently connected as a single scheme or plan to justify joinder if "the State can establish that: they are connected by a distinctive nature; a common modus operandi linked the crimes; and that the same motive induced the criminal behavior." *Id.* at 246. We observed that modus operandi means literally "method of working" and refers to a pattern of criminal behavior so distinctive that separate crimes may be recognized as the work of the same wrongdoer. *Id.* We also observed:

> Mere repetition of similar crimes does not by itself warrant admission of the evidence of those crimes under the modus operandi rule. In order for the modus operandi rule to serve its intended purpose, the inquiry must be, "Are these crimes so strikingly similar that one can say with reasonable certainty that one and the same person committed them?" Not only must the methodology of the two crimes be strikingly similar, but the method must be unique in ways which attribute the crimes to one person. Given the inherent similarities in all sex crimes, the common use of disguises, and the frequent late night or early morning timing of residential intrusions, we can not [sic] say that these attacks reveal a distinctive modus operandi.

*Id.* at 246-247 (quoting *Penley v. State*, 506 N.E.2d 806, 810 (Ind. 1987)).

[24] We held that although both crimes were sexual assaults that occurred in Anderson by a perpetrator gaining entry to the victim's home through a window late at night, the crimes were not so strikingly similar as to say that they were part of a "single scheme or plan." *Id.* at 247. Accordingly, we held that if Wilkerson had moved to sever the charges, the trial court would have lacked discretion to deny such a motion. *Id.* With respect to prejudice, we held that even if Wilkerson had been tried separately, it could not be said that there would have been insufficient evidence to support his conviction. *Id.* at 248. We also held that had the charges been tried separately the trial court could not have ordered the sentences to run consecutively on the basis of the version of Ind. Code § 35-50-1-2 in effect at the relevant time. *Id.* We also observed that the direct testimony of Wilkerson's counsel was that he recalled no strategy reason for not seeking severance. *Id.* at 249. We concluded that Wilkerson received ineffective assistance of counsel as a result of his counsel's failure to move for severance. *Id.*

[25] Unlike in *Maymon*, in which the court did not specify whether trial counsel testified regarding a possible strategy, and *Wilkerson*, in which trial counsel recalled no strategy reason for not seeking severance, Mullis's trial counsel, Attorney Nowak, testified regarding his strategic reasons for not filing a motion to sever. We also note that Attorney Nowak testified that he never discussed the option of filing a motion to sever "because by the time I had all the facts to make a determination on that issue . . . [Mullis] was never around to further

discuss it." Post-Conviction Transcript at 17. Further, when asked why he did not ask for a continuance and discuss the issue of severance with Mullis, he testified that he looked at the case summaries, determined that it would be difficult to obtain a continuance, and that informing the trial court that Mullis failed to maintain contact with him could result in the trial court revoking his bond or taking other actions that would be detrimental to Mullis.

[26] Even if we assume that trial counsel's failure to seek severance constituted deficient performance, we cannot say that Mullis has established that he was prejudiced. In contrast to *Maymon*, Mullis's intent to commit a felony in the Yee Kee restaurant was readily established. Hicks testified that in the early morning hours of June 5, 2006, he observed two men dressed in black with black gloves, one of the men took an object and "just whip[ped] it through this window," the two men entered the restaurant, exited, looked at him, and they then just jogged and "they hit that corner and I mean they were off at a dead run." Trial Transcript at 172, 175. Columbus Police Officer John Luttrell testified that he responded to the report of the break-in at the restaurant, observed Mullis hiding behind a shrub, ordered him to stop, deployed his dog when Mullis began running, and discovered a dark brown canvas type glove on the ground where Mullis was taken into custody. Within a few minutes of Hicks making the 911 call, the police had arrested Mullis, and Hicks identified him as the person he observed entering and exiting the restaurant. Peter Lankey testified that he pled guilty to burglary related to the events that occurred at the Yee Kee Restaurant, that he knew Mullis, that he and Mullis

burglarized the restaurant looking for money, and that they became scared and began running when they observed a car. Mullis's intent under the charge related to the restaurant was not established solely through the evidence admitted to establish his conviction for the burglary of the hair salon. As to the latter, the record reveals that a rock had been thrown through a window to gain entry, several items had been removed, including money, and a forensic scientist testified that glass fragments from Mullis's shoes were similar to the optical and other characteristics of the glass standard recovered from the hair salon. The forensic scientist also testified that it was an uncommon type of glass, and, as pointed out by the post-conviction court, Mullis's shoe print was found on glass inside the hair salon. Under the circumstances, we cannot say that Mullis has established that he was prejudiced. *See Clark v. State*, 695 N.E.2d 999, 1003-1004 (Ind. Ct. App. 1998) (declining the defendant's invitation to reverse his conviction for sexual misconduct with a minor on the basis of ineffective assistance of counsel for failure to file a pre-trial motion to sever counts of child molesting and sexual misconduct with a minor where the evidence on the sexual misconduct with a minor count was substantial), *reh'g denied*, *trans. denied*.

[27] To the extent Mullis asserts that severance would have resulted in concurrent sentences on the two underlying charges, we disagree. In *Wilkerson*, to which Mullis cites, the court held that Ind. Code § 35-50-1-2 had been interpreted to mean that a trial court has authority to impose consecutive sentences only when it is contemporaneously imposing two or more sentences. 728 N.E.2d at 248

(citing *Kendrick v. State*, 529 N.E.2d 1311, 1312 (Ind. 1988); *Seay v. State*, 550 N.E.2d 1284, 1289 (Ind. 1990)). The court noted: "Although not applicable to this case as Wilkerson was sentenced in 1987, the 1994 amendment to Ind. Code § 35-50-1-2 has overturned the contemporaneity requirement set forth in *Kendrick* and *Seay*." *Id.* at 248 n.2 (citing *Weaver v. State*, 664 N.E.2d 1169, 1170 (Ind. 1996); *Elswick v. State*, 706 N.E.2d 592, 594 (Ind. Ct. App. 1999)). Mullis committed his crimes and was sentenced well after the 1994 amendment. At the time of his offenses and sentencing, Ind. Code § 35-50-1-2 provided in part that "[t]he court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time."[4] Thus, we cannot say that the trial court would have been required to sentence Mullis to concurrent sentences had the charges been severed.[5] We cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

---

[4] Subsequently amended by Pub. L. No. 126-2008, § 12 (eff. July 1, 2008); Pub. L. No. 125-2012, § 416 (eff. July 1, 2012); Pub. L. No. 126-2012, § 59 (eff. July 1, 2012); Pub. L. No. 13-2013, § 144 (eff. April 1, 2013); Pub. L. No. 214-2013, § 43 (eff. July 1, 2013); Pub. L. No. 158-2013, § 650 (eff. July 1, 2014); Pub. L. No. 168-2014, § 108 (eff. July 1, 2014); Pub. L. No. 238-2015, § 16 (eff. July 1, 2015); Pub. L. No. 13-2016, § 18 (eff. July 1, 2016).

[5] Mullis also appears to argue that filing a second habitual offender if the charges had been severed would have constituted vindictive prosecution. We cannot say that he cited to authority for this assertion or developed a cogent argument regarding its impact as to whether he received ineffective assistance. Accordingly, this issue is waived.

## *Conclusion*

[28] For the foregoing reasons, we affirm the post-conviction court's denial of Mullis's petition for post-conviction relief.

[29] Affirmed.

Robb, J., and Mathias, J., concur.